IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No.: 0:21-cv-60097
Judge Cecelia M. Altonaga

HYDROJUG INC., a Delaware corporation,

    Plaintiff,

v.

HYDROMATE LLC and NATUREWORKS LLC,
Florida limited liability companies,

    Defendants.
_____/

## RENEWED[1] MOTION FOR PRELIMINARY INJUNCTION

Plaintiff, HYDROJUG, INC. ("Hydrojug"), through counsel and pursuant to Fed. R. Civ. P. 65, hereby moves for preliminary injunction against, HYDROMATE LLC and NATUREWORKS LLC dba HYDROMATE (collectively "Hydromate") to stop Hydromate from:

    (a) infringing on the HYDROJUG registered trademark with its HYDROMATE mark;

    (b) marketing and selling water bottle sleeve designs that infringe on Hydrojug's patent; and

    (c) copying and infringing upon Hydrojug's creative works.

---

[1] On March 15, 2021, Plaintiff filed a Motion for Preliminary Injunction (the "Original PI Motion") [DE 10]. On March 16th, the Court entered an Order denying the Original PI Motion as procedurally deficient [DE 11], noting that the docket did not reflect that Defendants had received Notice of the filing of Original PI Motion nor the Complaint. As per the Court's Order, Returns of Service have been filed as DE 12 and DE 13, indicating that the Amended Complaint and Summons have been served on each Defendant. In addition, notice of this Renewed Motion for Preliminary Injunction is being provided to Defendants pursuant to Fed. R. Civ. P. 65 in the manner set forth in the Certificate of Notice and Service on the last page of this Renewed Motion.

1

Hydromate's wide-ranging infringements generate actual customer confusion—at least eighteen (18) known and recent incidents. This irreparable harm will continue absent injunction. For these and other reasons described in more detail in the accompanying memorandum, Hydrojug respectfully requests a preliminary injunction.

## I.     INTRODUCTION

Hydrojug and Hydromate are competitors. They sell oversized water bottles and sleeves direct-to-consumer through online e-commerce platforms linked to social media like Instagram. In all respects, Hydrojug has been first to market in this category with its brand, products, and creative works. Hydrojug owns: (a) multiple trademark registrations for the HYDROJUG mark, (b) an issued design patent for its water bottle sleeve, and (c) a copyright registration for its social media posts. In contrast, Hydromate owns no such perfected interests. Rather, Hydromate commits each of trademark, patent, and copyright infringement and Hydrojug has a substantial likelihood of success in proving it.

First, Hydromate's use of the junior HYDROMATE mark infringes on Hydrojug's rights in the senior HYDROJUG trademark. The marks and their commercial impressions are highly similar. Moreover, the parties' oversized water bottles are highly similar and their water bottle sleeves are nearly identical. The parties also have same and/or similar online sales and advertising methods. Most significantly, <u>Hydrojug presents eighteen (18) instances of actual customer confusion</u>. Second, Hydromate's water bottle sleeves infringe on Hydrojug's patent for the sleeve design. The designs have the same and/or highly similar shape, configuration, apertures, and pockets. Third, Hydromate's Instagram posts were made just three (3) days after Hydrojug's copyrighted posts and are both strikingly and substantially similar to them.

Hydrojug's multifaceted infringements have a synergistic effect in generating the customer confusion presented herein. This confusion is itself irreparable harm and is attended by

other irreparable harms to Hydrojug such as reputational harm, loss of control, loss of goodwill in the market, and price erosion. This will continue absent injunction. Moreover, the balance of harms and public interest favors injunction.

II.   **FACTURAL BACKGROUND**

   A.  **The Parties**

Hydrojug is a domestic and global retailer of large water bottles for fitness.[2] Hydrojug started selling its signature, half-gallon water bottles in 2016, and thereafter expanded its product line to include water bottle sleeves, straws, and now electrolyte supplements. Hydrojug's product and marketing focus encourages people to hydrate and drink water. It markets under the HYDROJUG word and logo marks (collectively "the HYDROJUG Mark"):



Currently, most of Hydrojug's sales are direct-to-consumer through its website (www.thehydrojug.com), although it is rapidly expanding its placements and will soon sell on Amazon.com, and through other outlets.

Hydromate began in late 2018 and/or early 2019. Hydromate follows Hydrojug product offerings, marks, themes, product designs, and photographs. For example, Hydromate also primarily offers oversized (including half-gallon) water bottles, water bottle sleeves, straws, and electrolyte supplements. Hydromates's marketing also focuses on hydration. It markets under HYDROMATE word and logo marks (collectively "the HYDROMATE Mark"):

---

[2] Unless otherwise cited, facts are from the accompanying Declaration of Hayden Wadsworth ("Wadsworth Decl."), and the exhibits thereto.



Hydromate sells direct to consumer through its website (www.hydromate.com) and Amazon.com.

### B. Hydromate's Trademark Infringement

Hydrojug has federally registered the HYDROJUG Mark in both word and stylized form:

| U.S. Reg. # | Mark | Goods & Services | First Use | Filing Date | Reg. Date |
|---|---|---|---|---|---|
| 5414493 | (HYDROJUG stylized logo) | reusable plastic water bottles sold empty | 1.13.17 | 4.21.17 | 2.27.18 |
| 5870021 | HYDROJUG | drinking straws; drinking straws of plastic; insulating sleeve holder for bottles; insulating sleeve holders made of neoprene for jars, bottles or cans; reusable plastic water bottles sold empty | 1.13.17 | 1.29.19 | 9.24.19 |
| 6015313 | (HYDROJUG stylized logo) | drinking straws; drinking straws of plastic; insulating sleeve holder for bottles; insulating sleeve holders made of neoprene for jars, bottles or cans; and on-line retail store services featuring hydration products and accessories, namely, water bottles, drinking bottles for sports, and bottle accessories including sleeves, carriers, and straws; on-line retail store services featuring hydration products and accessories, namely, water bottles, drinking bottles for sports, and bottle accessories including sleeves, carriers, and straws | 1.13.17 | 7.9.19 | 3.17.20 |

*See* First Amended Complaint, Docket No. 9, at ¶ 10 & Ex. A.

Hydrojug has extensively advertised the HYDROJUG mark, spending millions of dollars over the last three years. Tens of millions of people view Hydrojug digital advertisements each year. This has garnered substantial recognition and following of the brand. For example, Hydrojug has obtained an active and engaged Instagram following of over 250,000 people. Some Hydrojug posts generate tens of thousands (10,000s) of comments and "likes." Through Instagram, people can buy Hydrojug products directly from photos, videos, and links. Hydromate also uses Instagram and digital advertising.

Hydrojug is aware of <u>at least eighteen (18)</u> instances of actual customer confusion caused by the junior and highly similar HYDROMATE Mark for oversized water bottles, sleeves, and related goods. Most have occurred within the last two (2) months and include Hydromate customers: (i) contacting Hydrojug to follow-up on Hydromate orders; (ii) contacting Hydrojug with complaints about Hydromate; (iii) mistakenly posting negative comments about Hydromate on Hydrojug's Facebook page; and (iv) expressing specific inquiries about the connection and/or affiliation between Hydrojug and Hydromate, or generally confusing the two.

*See* Declaration of Hanna Brown, attached hereto as Exhibit A ("Brown Decl."), at ¶ 11 and Exs. 1 – 18 to the Brown Decl. (with transcripts).

Specific customer comments include:

"*I must be totally confused.*" *Id.* at Ex. 7.

"*I was confused on brand.*" *Id.* at Ex. 9.

"*[J]ugs look exactly the same and the name is almost the same.*" *Id.* at Ex. 1.

"*…looks similar…*" *Id.* at Ex. 8.

"*Is hydromate & hydrojug the same company??*" *Id.* at Ex. 10.

5

Significantly, <u>at least six (6) of these instances relate to water bottle sleeves.</u> *See., e.g.*, *id.* at ¶ 12 & Exs. 2, 5, 7, 9, 12, 14. These are just examples. Hydrojug is confident that ongoing investigation and/or discovery will reveal many more instances of actual customer confusion.

Hydrojug is not aware of any other actual confusion relating to its HYDROJUG mark and third parties. *See id.*, at ¶ 13; *see also* Declaration of Hayden Wadsworth, attached hereto as Exhibit B ("Wadsworth Decl."), at ¶ 29.

### C. Hydromate's Patent Infringement

Hydrojug's portfolio of patents and pending patents include <u>U.S. D899,914</u> (CONTAINER SLEEVE) ("the '914 Patent") for a water bottle sleeve that it developed:



    *'914 Patent, Figure 1*        *'914 Patent, Figure 5*

*See* First Amended Complaint, Docket No. 9, at ¶ 11 & Ex. B. While Hydrojug's high quality sleeves typically sell for around $20, Hydromate's lower quality sleeves often sell at around $15.

Hydromate offers an entire line of sleeves with Hydrojug's design in the '914 Patent:

6

   

*Hydromate sleeve*                *Hydromate sleeve*

Hydromate sleeves have the same and/or highly similar shape, apertures, and pockets as those claimed in the '914 Patent.

### D. Hydromate's Copyright Infringement

Because digital advertising through Instagram and other social media is a key aspect of its success, Hydrojug develops unique and creative content. This includes its July 9, 10, and 11, 2020 leopard-themed, claw-ripped Instagram posts for water bottle sleeves:

  

7

These works are registered pursuant to U.S. Copyright No. VA0002235401. *See* First Amended Complaint, Docket No. 9, at ¶ 12 & Ex. C. Just three days after Hydrojug's Instagram posts, Hydromate posted derivatives on its Instagram having both striking and substantial similarity:

  

To Hydrojug's knowledge, Hydromate has <u>no</u> registered trademarks, issued patents, or registered copyrights.

### III.     PROCEDURAL BACKGROUND

On December 15 and 17, 2020, Hydrojug sent a cease-and-desist letter, draft complaint, and follow-up letter to Hydromate. Hydrojug's letters asserted patent infringement and requested that Hydromate stop selling infringing sleeves. On December 21, 2020, Hydromate's counsel responded, declining Hydrojug's demands. On January 15, 2021, Hydrojug filed the complaint, with its claim of trademark infringement and actual confusion. *See* Docket No. 1. The complaint was not served. Thereafter, counsel for both sides indicated a desire to discuss settlement.

On January 29, 2021, counsel met telephonically to discuss Hydrojug's claims of trademark infringement, patent infringement, Hydrojug's new claim of copyright infringement, and the potential for settlement. However, no progress was made with respect to settlement.

8

Hydromate continues to sell under the HYDROMATE mark, including infringing water bottle sleeves. So, Hydrojug files its First Amended Complaint (Docket No. 9) and serves the same on Hydromate concurrently with this motion for preliminary injunction.

## IV.     PRELIMINARY INJUNCTION STANDARD

A district court may grant injunctive relief if the moving party shows that: (1) it has a substantial likelihood of success on the merits; (2) irreparable injury will be suffered unless the injunction issues; (3) the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) if issued, the injunction would not be adverse to the public interest.

*Siegel v. Lepore*, 234 F.3d 1163, 1176 (11th Cir. 2000).

## V.     ARGUMENT

### A. Hydrojug has a Substantial Likelihood of Success on the Merits

#### 1. Hydrojug shows trademark infringement through rights in its mark and a likelihood of confusion based on actual confusion.

Hydrojug establishes trademark infringement with valid rights in its mark and likelihood of confusion grounded in extensive actual confusion.

To establish a prima facie case of trademark infringement under the Lanham Act, a plaintiff must show (1) that it had trademark rights in the mark or name at issue and (2) that the other party had adopted a mark or name that was the same, or confusingly similar to its mark, such that consumers were likely to confuse the two.

*Off Lease Only, Inc. v. Lakeland Motors*, LLC, 825 Fed. Appx. 722, 728 (11th Cir. 2020) (internal citations and quotations omitted).

Hydrojug owns rights in the HYDROJUG Mark pursuant to U.S. Reg. Nos. 5414493, 5870021, and 6015313. The registrations create a presumption that the HYDROJUG mark is protectable and distinctive. 15 U.S.C. §1057(b). The HYDROJUG Mark has been in use in interstate commerce at least as early as January 2017 in connection with Hydrojug's oversized water bottles, water bottle sleeves, straws, electrolyte supplements, and related goods and accessories. Hydrojug continues to use the mark today.

Likelihood of confusion is proven here by <u>ample</u> evidence of actual confusion among other factors. More particularly, seven factors are considered in likelihood of confusion analysis:

> (1) strength of the mark alleged to have been infringed; (2) similarity of the infringed and infringing marks; (3) similarity between the goods and services offered under the two marks; (4) similarity of the actual sales methods used by the holders of the marks, such as their sales outlets and customer base; (5) similarity of advertising methods; (6) intent of the alleged infringer to misappropriate the proprietor's good will; and (7) the existence and extent of actual confusion in the consuming public.
>
> The district court need not consider all factors in every case. . . . <u>The type of mark and the evidence of actual confusion are the most important of all the factors.</u>

*Savanna Coll. Of Art & Design v. Sportswear, Inc.*, 983 F.3d 1273, 1281 (11th Cir. 2020) (emphases added; internal quotations and citations omitted). "<u>Evidence of actual confusion is 'ordinarily decisive.</u>'" *Nailtiques Cosmetic Corp. v. Salon Sciences Corp.*, 1997 U.S. Dist. LEXIS 4662, at *8 (S.D. Fla. Jan. 10, 1997) (citing and quoting Restatement of Unfair Competition; emphasis added). Examination of these factors here shows likelihood of confusion.

      a.   *The Hydrojug Mark is strong because it is at least suggestive.*

The HYDROJUG Mark is strong because it is at least suggestive, if not more distinctive. Mark strength is shown in significant part by distinctiveness. Specifically, there are:

> four categories of a mark's distinctiveness, listed in ascending order of strength: (1) <u>generic</u>—marks that suggest the basic nature of the product or service; (2) <u>descriptive</u>—marks that identify the characteristic or quality of a product or service; (3) <u>suggestive</u>—marks that suggest characteristics of the product or service and require an effort of the imagination by the consumer in order to be understood as descriptive; and (4) <u>arbitrary or fanciful</u>—marks that bear no relationship to the product or service, and the strongest category of trademarks.

*Savanna Coll. Of Art & Design*, 983 F.3d 1273, 1282 (11th Cir. 2020) (emphases added).

> Suggestive and arbitrary or fanciful marks are deemed "inherently distinctive" because "their intrinsic nature serves to identify a particular source of a product" and are generally entitled to trademark protection.

10

*Tana v. Dantanna*, 611 F.3d 767, 774 (11th Cir. 2010).

Marks that are registered by the USPTO without proof of secondary meaning are presumed distinctive as suggestive, arbitrary, or fanciful (as opposed to descriptive), and therefore strong. *Abercrombie & Fitch co, v. Hunting World Inc*., 537 F.2d 4, 11 (2d Cir. 1976); *Pizzeria Uno Corp. v. Temple*, 747 F.2d 1522, 1534 (4th Cir. 1984); *All. For Good Gov't v. Coalition for Better Gov't*, 901 F.3d 498, 510 (5th Cir. 2018); *GTE Corp. v. Williams*, 904 F.2d 536, 538-39 (10th Cir. 1990). Moreover, stylized marks are strong because they are rendered in a distinctive form. *See Patsy's Brand, Inc. v. I.O.B., Realty, Inc*., 317 F.3d 209, 217 (2d Cir. 2003); *Golden Bear Int'l, Inc. v. Bear U.S.A*., Inc., 969 F.Supp. 742, 744 (N.D. Ga. 1996).

The HYDROJUG Mark has been fully examined and federally registered by the USPTO in both word and stylized forms. These registrations were obtained without any showing of secondary meaning. Therefore, the HYDROJUG Mark is at least suggestive, if not fanciful (as an invented word or symbol).[3]

> b. *The marks are highly similar.*

The HYDROMATE and HYDROJUG marks are highly similar in overall appearance, visually, phonetically, meaning, and commercial impression. They both incorporate the dominant HYDRO- prefix, and, in stylized form, bold HYDRO- prefix, de-emphasized suffix, and single water drip design:

---

[3] Even assuming, for the sake of argument, that the HYDROJUG Mark were descriptive—and it is not—secondary meaning is established through Hydrojug's extensive advertising and other evidence showing significant brand recognition and following. *See* Wadsworth Decl. at ¶¶ 7 - 11. Moreover, Hydromate's copying—referenced herein throughout—would also be "probative of the existence of secondary meaning." *McCarthy on Trademarks and Unfair Competition*, § 15:38 (5th Ed.); *accord FN Herstal SA v. Clyde Armory Inc.*, 838 F.3d 1071, 1086 (11th Cir. 2016).

 

    c. *The goods are highly similar and/or identical.*

Products under the HYDROMATE Mark are identical and/or very highly similar to those under the HYDROJUG Mark—namely, oversized water bottles, water bottle sleeves, straws, and the like. *See* Wadsworth Decl., at Exs 1 & 2. As set forth in Part V.A.2, *infra*., Hydromate's water bottle sleeves even incorporate Hydrojug's patented sleeve design. Significantly, "[t]he greater the similarity between the products and services, the greater the likelihood of confusion." *John H. Harland Co. v. Clarke Checks, Inc*., 711 F.2d 966, 976 (11th Cir. 1983) (internal quotation and citation omitted).

    d. *The parties have the same or similar sales and advertising methods.*

Both parties sell directly through their respective websites (with confusingly similar names) and use digital advertising and social media like Instagram to target highly similar and/or same customer bases. *See* Wadsworth Decl., at ¶¶ 5-15 & 17-19.

    e. *Hydromate reveals bad faith intent to misappropriate Hydrojug's good will.*

Hydromate's pattern of copying shows bad faith and intent to capitalize on Hyrojug's reputation and good will. *See Jellibeans, Inc. v. Skating Clubs of Ga., Inc*., 716 F.2d 833, (11th Circuit 1983) (stating that intent is proven by circumstantial evidence). Hydromate's ongoing infringements confirm this. *See, e.g*., *W. Union Holdings, Inc. v. Haideri Paan & Cigarettes Corp*., 2020 U.S. Dist. LEXIS 38788, 2020 WL 1061653, at *7 (E.D.N.Y. Mar. 5, 2020) (continuing to use trademark after receiving cease-and-desist letter sufficient to create presumption of intent to confuse market).

    f. *There is <u>actual confusion</u> among customers.*

<u>Hydrojug submits at least eighteen (18) specific instances of actual customer confusion and has reason to believe a great deal more will be revealed during this action.</u> "Although evidence of actual confusion is not necessary to a finding of a likelihood of confusion, it is nevertheless the best evidence of likelihood of confusion." *Amstar Corp. v. Domino's Pizza, Inc*., 615 F.2d 252, 263 (11th Cir. 1980) (citing *Roto-Rooter Corp. v. O'Neal*, 513 F.2d 44, 46 (5th Cir. 1975)).

"The quantum of evidence needed to show actual confusion is relatively small.'" *Caliber Auto. Liquidators, Inc. v. Premier Chrysler, Jeep, Dodge, LLC*, 605 F.3d 931, 937 (11th Cir. 2010) (quoting *Jellibeans, Inc. v. Skating Clubs of Ga., Inc*., 716 F.2d 833, 845 (11th Cir. 1983)). While one instance may be insufficient, *e.g*., *Wreal, LLC v. Amazon.com*, 2015 U.S. Dist. LEXIS 187420 at *16 - *20 (S.D. Fla. Aug. 31, 2015), two instances can be enough. *Safeway Stores, Inc. v. Safeway Disc. Drugs, Inc*. 675 F.2d 1160, 1167 (11th Cir. 1982). Instances of actual <u>customer</u> confusion are weighted more heavily. *See Fla. Int'l Univ. Bd. Of Trs. v. Fla. Nat'l. Univ*., 830 F.3d 1242, 1264 (11th Cir. 2016) (customer confusion accorded "substantial weight"); *Playnation Play Sys. v. Velex Corp*., 924 F.3d 1159, 1167 (11th Cir. 2019) ("Evidence that ultimate consumers were actually confused deserves 'special attention.'").

Significantly, <u>in the recent case of *Playnation Play Sys. v. Velex Corp*., the Eleventh Circuit upheld a district court's finding of actual confusion when just *two* purchasers of Company A's products mistakenly contacted Company B for customer service, believing Company B to be the source of the products.</u> 924 F.3d at 1167-68.

Hydrojug's eighteen (18) instances of actual customer confusion far exceed those in the *Playnation Play* case, and represent overwhelming proof of likelihood of confusion. The statements show textbook actual confusion and are decisive here:

13

> "*I must be totally confused.*"
>
> "*I was confused on brand.*"
>
> "*[J]ugs look exactly the same and the name is almost the same.*"
>
> "*Is hydromate & hydrojug the same company??*"

"[A]n almost overwhelming amount of proof would be necessary to refute such proof." *Caliber Auto. Liquidators, Inc.,* 605 F.3d 931 at n. 28 (quoting *World Carpets, Inc. v. Dick Littrell's New World Carpets*, 438 F.2d 482, 489 (5th Cir. 1971)). Hydrojug is not aware of any other actual confusion relating to its HYDROJUG mark and third parties. Hydrojug is confident that more actual confusion evidence will be found from Hydromate as this action proceeds. More importantly, actual confusion will continue, together with irreparable harm, absent injunctive relief.

### 2. Hydrojug shows patent infringement because Hydromate's carrier sleeves are virtually identical to Hydrojug's patented design.

Hydrojug has a substantial likelihood of showing design patent infringement.

> The "ordinary observer" test is used to determine whether a design patent has been infringed. . . . The test inquires whether an accused design appears "substantially the same" as a patented design, such that "an ordinary observer, giving such attention as a purchaser usually gives," would be induced "to purchase one supposing it to be the other."

*Super-Sparkly Safety Stuff, LLC v. Skyline USA, Inc.*, 2020 U.S. App. LEXIS 38852, at *5 (Fed. Cir. Dec. 11, 2020). Hydromate's carrier sleeves infringe because they are substantially the same as Hydrojug's patented design. For example, they have the same and/or highly similar shape, configuration, dimensions, apertures, and pockets. Moreover, ordinary purchasing customers are <u>currently</u> confusing the two products. *See* Brown Decl. at ¶ 12 & Exs. 2, 5, 7, 9, 12, 14.

### 3. Hydrojug shows copyright infringement by striking and substantial similarity between the works at issue.

Hydrojug has a substantial likelihood of showing copyright infringement.

> To establish infringement, two elements must be proven: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original. . . . A plaintiff may prove copying directly . . . or rely on indirect proof. How the plaintiff uses indirect evidence to prove copying depends on whether the plaintiff can prove that the defendant had access to the copyrighted work. If the plaintiff cannot prove access, the plaintiff must prove that the defendant's work is "strikingly similar" to the plaintiff's work. Alternatively, the plaintiff can prove that the defendant had access to the copyrighted work and that the defendant's work is "substantially similar" to the copyrighted work. . . . To determine whether an allegedly infringing work is substantially similar to a copyrighted work, we ask whether an average lay observer would recognize the alleged copy as having been appropriated from the copyrighted work.

*Baby Buddies, Inc. v. Toys "R" Us, Inc.*, 611 F.3d 1308, 1315 (11th Cir. 2010) (internal quotations and citations omitted).

Here, Hydromate had access to Hydrojug's public Instagram. Moreover, Hydromate's posts were made just days after Hydrojug's. Comparison of Hydrojug's copyrighted material to Hydromate's copies demonstrates both striking and substantial similarity. Specifically, the average observer readily recognizes Hydromate's copying of the various elements of Hydrojug's images, including:

- two brightly colored bottles and one neutral colored, oversized bottle;
- oversized bottles in patterned—particularly leopard skin—sleeves;
- black background;
- a series of filled, and/or leopard-patterned, claw rip shapes and configurations bordering the bottles; and
- to one side, against the black background, repeated and stacked outline lettering bearing words such as "LEOPARD".

**B. Irreparable Harm Results from Hydromate's Multiple Infringements**

Hydromate's multifaceted infringements result in irreparable harm. "Trademark actions 'are common venues for the issuance of preliminary injunctions . . . . [and] a 'sufficiently strong

15

showing of likelihood of confusion may by itself constitute a showing of . . . substantial threat of irreparable harm." *McDonald's Corp. v. Robertson*, 147 F.3d 1301, 1310 (11th Cir. 1998). "This is so because a remedy at law for consumer confusion or reputational damage is ordinarily inadequate given 'the potential difficulty of proof of plaintiff's damages' and 'the impairment of intangible values.'" *Boulan South Master Ass'n v. Think Props*., LLC, 617 Fed. Appx 931, 934 (11th Cir. 2015). Therefore, Eleventh Circuit "precedent recognizes such confusion as an injury that ordinarily warrants injunctive relief." *See id.*

For patent infringement, irreparable harm may be shown by loss of revenue, goodwill, market position, and price erosion. *Lego v. Zuru, Inc.*, 700 Fed. Appx. 832, 834 (Fed. Cir. 2020). For copyright infringement, irreparable harm may be shown by loss of ability to control reputation and market confusion, including through using marketing developed by the copyright holder. *See, e.g*., *Brand Ventures, Inc. v. TAC5*, 2018 U.S. Dist. LEXIS 17354, at *10 - *11 (M.D.Fla. Feb. 2, 2018).

Hydromate's multiple infringements overlap in effect and each contribute towards the demonstrated customer confusion, reputational harm and loss of control, and loss of Hydrojug goodwill in the market. Moreover, Hydromate's design patent infringement is causing price erosion. Therefore, there is a substantial threat of irreparable harm absent injunction.

C. **The balance of harm favors Hydrojug**

The balance of equities weighs heavily in Hydrojug's favor. Should an injunction not issue, Hydrojug would continue to be irreparably harmed, including but not limited to, ongoing customer confusion, reputational harm and loss of control, loss of Hydrojug's goodwill in the market, and price erosion of its sleeves.

Moreover, Hydrojug is entitled to the exclusive use of its intellectual property (trademark, patent, copyright) rights, and a preliminary injunction would preserve these. On the

other hand, the requested injunction would not unreasonably interfere with Hydromate's business. Hydromate could sell non-infringing products, under a non-infringing mark, using their own designs and works. Any losses to Hydromate in failing to respect Hydrojug's intellectual property rights are a result of the Hydromate's own wrongdoing. This "self-inflicted" harm, when balanced against the loss of Hydrojug's irreparable harm, tips the balance of hardships in favor of granting injunctive relief. *See, e.g., Interim Healthcare, Inc. v. Interim Healthcare of Se. La., Inc.,* 2020 U.S. Dist. LEXIS 101841, at *51 (S.D. Fla. June 10, 2020) ("In this case, by granting the requested injunction, Defendants would only be prevented from continuing to use Plaintiff's marks without its consent, which is illegal to begin with.").

    **D. Public interest is furthered by issuance of an injunction**

The public interest is furthered by issuance of an injunction here. The public interest favors granting the preliminary injunction to protect Hydrojug's intellectual property rights and to protect consumers from being misled. *See id*. at *52-*53.

**VI.    INJUNCTIVE RELIEF SOUGHT**

    Hydrojug seeks an order preliminarily enjoining Hydromate, its agents, servants, and any and all parties acting in concert with any of from:

    A.  using the HYDROMATE Mark, or any similar variations thereof;

    B.  using any trademark that imitates or is confusingly similar to the HYDROJUG Mark, or is likely to cause confusion, mistake, deception, or public misunderstanding as to the origins of Hydromate's goods or their relatedness to Hydrojug; and

    C.  engaging in trademark infringement, unfair competition, false designation of origin, or other activities that misappropriate Hydrojug's trademark rights;

    D.  making, using, offering to sell, or selling the Accused Products (as identified in the complaint) and any other water bottle sleeve design that infringes the '914 Patent;

    E.  directly or indirectly infringing in any manner any of the claims of the '914 Patent;

    F.  infringing Hydromate's copyrights, including the Hydrojug Leopard Social Media Posts;

    G.  from aiding, assisting or abetting any other party in the acts prohibited by (A) through (F) above; and

    H.  directing that Hydromate files with the Court and serve upon Hydrojug's counsel within three (3) days after entry of such judgment a report in writing under oath setting forth in detail the manner and form in which Hydromate has complied with such Order.

## VII. CONCLUSION

Hydrojug has a substantial likelihood of success in establishing trademark, patent, and copyright infringement by Hydromate. Irreparable harm is taking place through actual consumer confusion, and it will continue absent injunction. The balance of harms favors Hydojug because Hydromate's harm is self-inflicted. The public interest in preventing consumer confusion weights in favor of injunction. Injunction is proper and warranted.

Dated: April 1, 2021

Respectfully submitted,

| | |
|---|---|
| By: /s/ Preston P. Frischknecht<br>    Preston P. Frischknecht<br>    (USB #11286) (*pro hac vice*)<br>    preston@projectcip.com<br>    PROJECT CIP<br>    399 N Main, Suite 220<br>    Logan, UT 84321<br>    Telephone: (435) 512-4893<br>    *Counsel for Plaintiff* | By:  /s/ Steven I. Peretz<br>    Steven I. Peretz<br>    Florida Bar No.: 329037<br>    speretz@pch-iplaw.com<br>    Alberto Alvarez<br>    aalvarez@pch-iplaw.com<br>    Florida Bar No.: 106859<br>    Peretz Chesal & Herrmann, P.L.<br>    1 S.E. 3rd Avenue, Suite 1820<br>    Miami FL 33131<br>    Tel: 305.341.3000<br>    *Counsel for Plaintiff* |

## **CERTIFICATE OF SERVICE AND NOTICE OF RENEWED MOTION**

I hereby certify that a copy of the foregoing Renewed Motion for Preliminary Injunction has been transmitted on April 1, 2021 to DLE Process Servers, Inc. for service on Defendants' Registered Agent.

In addition, Plaintiff has provided Defendants with notice of the Renewed Motion pursuant to Fed. R. Civ. P. 65 (the "Rule 65 Notice") by the following means:

1.  transmitting a copy of the Renewed Motion on April 1, 2021 via Certified Return Receipt U.S. Mail and UPS Overnight Delivery to Defendants' principal place of business and mailing address (as reflected in the records available on the Florida's Secretary of State's website, www.sunbiz.org): 1314 E Las Olas Blvd., #1002, Fort Lauderdale, Florida 33301;

2.  transmitting a copy of the Renewed Motion on April 1, 2021 via e-mail to help@hydromate.com (an email address displayed on Defendants' website hydromateusa.com); and

3.  transmitting a draft copy of the Renewed Motion via email to Robert Kain, Esq., at rkain@conceptlaw.com on March 29, 2021. In the March 29 transmittal email, the undersigned requested that Mr. Kain to confirm that he would accept a copy of the Renewed Motion as a Rule 65 Notice. Plaintiff transmitted the Renewed Motion to Mr. Kain because Mr. Kain had advised Plaintiff – both prior to and after Plaintiff had commenced this action – that Defendants were his clients. In Mr. Kain's March 30 reply email to the undersigned, he again acknowledged that Defendants were his clients, but declined to address – as the undersigned had requested – whether he would treat his receipt of the Renewed Motion as a Rule 68 Notice. Consequently, Plaintiff served Defendants directly with a copy of this Renewed Motion as set forth above. See *Michael Kors, LLC v. Individuals, Partnerships, & Unincorporated Associations*, 2019 WL 9598505, at *6 (S.D. Fla. Dec. 27, 2019)("In this Circuit, Rule 65 has been interpreted to require that a party have notice of the motion and hearing; perfecting service on a defendant is not a prerequisite to the entry of a preliminary injunction order.")

/s/Alberto Alvarez